WILLIAM B. WYNN, APPELLANT, vs. FRANCIS R. ELY, APPELLEE.

1. Notice of the institution of a suit for foreclosure of a mortgage, is properly executed by handing a copy to defendant.

2. It is not a good defence to a suit by the assignee of the mortgage, that the assignor was insolvent.

3. Nor that the mortgagor had sold part of the property with consent of the mortgagee or his assignee, without an allegation that the proceeds had been applied to the payment of the mortgage debt.

4. The assignee of the mortgage is by statute the proper person, and has full right to institute suit for the foreclosure.

5. It is not good ground for a continuance, in cases of this kind, that defen? dant had waited until the issues were joined before getting his witnesses or his evidence for the trial.

This case was decided at Marianna.

On the first day of April, 1853, Wynn, the appellant, gave his promissory note to J. Day & Co., of Apalachicola, for $7,034 68, and on the same day executed a mortgage on certain negro slaves to secure the payment of said note. Afterwards, J. Day & Co. assigned and delivered the said note and mortgage to Ely, the appellee.

On the 20th day of September, 1855, Ely instituted this suit against Wynn by petition to foreclose the said mortgage.

A notice, dated the 30th day of April, 1856, signed by the Clerk of the Court and by the attorney of the petitioner, notifying the defendant of the filing of said petition, and that the petitioner would, at the next term of the Circuit Court, move the Court for the forclosure of said mortgage, and for a judgment for the said debt, was served on the defendant by the sheriff on the 6th day of May, 1856, who returned the said notice endorsed, "Executed the within writ by handing the defendant a copy at his residence."

On the 27th day of November, 1856, "came the parties by their attorneys, and the defendant by his attorney excepted to the notice, which exceptions were overruled by the Court."

Upon the affidavit of defendant that he had not the proof to sustain certain credits claimed by him, a continuance was granted.

By leave of the Court, defendant afterwards and on the 26th January, 1857, filed pleas in the following form, viz:

"William B. Wynn, by leave of the Court first had and obtained, comes and makes this his answer to the petition, or so much thereof as he is advised it is necessary to answer, of Francis R. Ely, filed in said Court, to foreclose a certain mortgage therein specified, responds, that he did execute the mortgage to J. Day & Co., as stated in said petition; that respondent was indebted to said J. Day & Co. at the time to the amount designated in said petition and said mortgage, but that it was the understanding between this respondent and the said J. Day & Co., that as this respondent paid sums of money into their hands that they were to credit his mortgage note with the same, which they have failed to do; that said note has no credit upon it for about the sum of six hundred dollars, which was due from the said J. Day & Co., the mortgagees, at the time that said mortgage is alleged to have been assigned to the petitioner, Francis R. Ely, the exact sum this respondent cannot state; that the said J. Day & Co., to whom said mortgage was executed, are insolvent, or so represented to be.

"Your petitioner, further answering, says, that he is also entitled to a further credit upon said mortgage; that, in the spring of 1846, this respondent shpped Jack, one of the negro slaves mentioned in said mortgage, to Columbus, Georgia, with the consent and approbation of said mortgagees, J. Day & Co., and with notice to petitioner Francis R. Ely, who made no objections on his own account to sale of said negro; that said negro slave Jack has been

sold, and this respondent asks that the proceeds arising from said sale may be credited upon said mortgage debt.

"Your respondent, further answering, says, that he is informed, and believes, that the petitioner, Francis R. Ely, is not the absolute owner of said mortgage debt, although the same appears to be assigned to him, but that in reality the absolute ownership is yet in the mortgagees, J. Day & Co.; that the said mortgage debt has been transferred and is held only as collateral security for a large amount of money due from the said J. Day & Co. to petitioner, and that in fact and reality the legal and *bona fide* holders of the mortgage debt stated in the said petition are the mortgagees, J. Day & Co.

"Your respondent further answers and says, that he is entitled to a credit of three thousand dollars, paid upon said mortgage debt to petitioner, Francis R. Ely, on or about the first day of December, A. D., 1855. Your respondent prays, that if the said mortgage in said petition mentioned is held by the said petitioner, Francis R. Ely, merely as collateral security from J. Day & Co. for a debt due from J. Day & Co. to said Francis R. Ely, and that the legal interest to the same is in said J. Day & Co., that the said petition of the said Francis R. Ely be dismissed. He also prays, that in the event your Honor should hold that said petitioner has the right to compel a foreclosure of said mortgage in his own name, that respondent may have said debt credited with the amounts due him from J. Day & Co., the mortgagees, before the same was transferred as collateral security, and with the proceeds of the negro sold in Columbus, Georgia, and with the sum paid Francis R. Ely in 1855, and that the same be referred to a special master to take and state an account of the whole matter touching the credits which

are proper to be applied in payment of said mortgage debt.                                WM. B. WYNN.

"Sworn to and subscribed before me, this 26th day of January, 1857.

"L. B. McKinney, *Clerk.*

"And, at a subsequent day, the petitioner filed his replication to defendant's pleas in the following words, to wit :

"And the said Francis R. Ely, as to the said plea by the said William B. Wynn first above pleaded, that said Wynn, the defendant, was entitled to a credit of about the sum of six hundred dollars on said note given by said defendant to J. Day & Co. in compliance with an understanding between them, your petitioner says, *precludi non,* because said defendant is not entitled to any such credit in manner and form as stated in said plea, and of this he puts himself on the country, &c.

"And, by way of further reply to said plea, this petitioner avers, that on the fifteenth day of October, 1854, and previously said defendant had notice of said assignment of said mortgage, and this your petitioner is ready to verify, &c.

"And said petitioner, as to the said plea of said defendant secondly above pleaded, to wit : the said J. Day & Co. are insolvent, or so reputed to be, says that he denies that they are insolvent, and of this he puts himself on the .country, &c.

"And this petitioner, Francis R. Ely, as to the third plea of defendant, that he is entitled to a credit for the proceeds of negro called Jack embraced in the said mortgage and shipped to Columbus with the consent and approbation of the said J. Day & Co., and with notice to your petitioner, who it is alleged in said plea made no objections on his own account, your petitioner says *precludi*

*non*, because he never gave any consent, directly or impliedly, to the shipment and sale of said negro Jack, and that the same were made without and against his consent, and of this he puts himself on the country, &c.

"And the said Francis R. Ely, as aforesaid, to the fourth plea of said defendant, that said petitioner is not the absolute owner of the said mortgage, and that the said J. Day & Co. are the legal and *bona fide* holders of the same, and that said mortgage was transferred as collateral security to your petitioner by said J. Day & Co., says, *precludis non*, because your petitioner, by said transfer of said mortgage, became and is the legal and absolute owner and possesses all the same means and remedies originally possessed by the said J. Day & Co., and that the said J. Day & Co. are not the legal and *bona fide* owners of the said mortgage, and of all this he puts himself on the country, &c.

" And the said Francis R. Ely, as to the fifth plea of the said defendant, that on or about the first day of December, 1855, the sum of three thousand dollars was paid by defendant to petitioner, to be credited on said mortgage, the said petitioner, F. R. Ely, says that he admits the payment of said sum and agrees hereby that the same shall be credited on said note, debt and mortgage.

" Defendant afterwards filed his demurrer to plaintiff's replication as follows, to wit:

" And the said defendant saith, that the replication of the said petitioner to the first plea of the defendant and the matters therein contained, in manner and form as the same are above replied and set forth, are not. sufficient in law for the petitioner to have or maintain his aforesaid action thereof against the said defendant, and that he is not bound in law to answer the same, and shows the Court here the following causes of demurrer in law to said repli-

cation—that is to say, that the said petitioner has filed two replications to one plea, and that the second replication to the first plea of defendant does not allege any sufficient answer to the plea of the said defendant; that said replication avers notice, on the first of October, 1854, and previously to defendant, of the assignment of the said mortgage, and this averment, the said defendant says, is not responsive to said plea or any answer whatever to said plea.

"And for demurrer to the third replication, the said defendant assigns the following grounds for demurrer: that it does not allege any sufficient answer to said plea in this, that the replication denies that J. Day & Co. are insolvent when the plea avers that they are reported to be insolvent, and in that it does not fully answer said plea.

"And the said defendant demurs to the fourth replication of the petitioner, and assigns for special cause this, that said replication avoids the issue tendered by defendant's plea in this, that it does not admit or deny that J. Day & Co. did not consent that the boy Jack should be shipped to Columbus and sold and the proceeds applied to said mortgage debt, and said replication does not show that said boy Jack was shipped after the assignment of said mortgage.

"And the said defendant demurs to fifth replication of petitioner, and it is not a sufficient reply in law, and assigns for a cause of demurrer this, that it does not reply issuably to defendant's plea in this, that the plea alleges that petitioner is not the absolute owner of said mortgage debt, but that he holds the same as collateral security on a large debt due him from J. Day & Co. to petitioner, and said replication does not deny this allegation and does not deny that said assignment was made as collateral security to petitioner on a debt due from J. Day & Co. to peti-

tioner, and that said replication is otherwise defective, informal, and unissuable in many respects."

The Court overruled the demurrer to the first and fourth replications, and held that the second and third pleas of defendant were bad under said demurrer. The defendant, by leave of the Court, joined issue with the replication to the other pleas.

The defendant's attorney, at the same term, applied for a continuance, on the ground that "he could not safely go to trial, because he had not taken the evidence to prove the indebtedness of J. Day & Co. to him before the assignment of the said mortgage, and which is set up in his first plea filed; that he would have taken the evidence of witnesses residing in Apalachicola but for the fact that the issues were not joined and made up until the present term of the Court; that the names of the witnesses to prove defendant's pleas were confided to C. C. Yonge, defendant's leading attorney, who was unavoidably absent, and in addition thereto, that the defendant was detained by sickness."

The Court refused the continuance asked for, and a jury being called, who returned a verdict for the petitioner for $5,328 76, judgment was thereupon entered and for a foreclosure of said mortgage, from which defendant appealed.

*Yonge & McClellan* for appellant.

*A. H. Bush* for appellee.

BALTZELL, C. J., delivered the opinion of the Court.

This was a suit for the foreclosure of a mortgage under the statute providing a remedy in such cases.

The objections raised in this Court are to rulings of the Court below on preliminary points and as to the pleadings.

The first objection is thus stated in the record : "Now at this day came the parties, by their attorneys, and the defendant, by his attorney, excepted to the notice, which exceptions were overruled by the Court." In this Court exceptions have been taken, as well to the notice as to its service. In neither do we think there was error. The law, which is a peculiar one, directs "personal service of notice of the intention of the party to institute a suit to be served upon the mortgagor." The notice here is signed, as well by the Clerk of the Court as the attorney giving notice of the filing of the petition for the foreclosure of the mortgage, with all necessary precision. We cannot perceive that anything more was wanting, or that anything was not done which the law required. "There was notice of the institution of the suit." The service was, "Executed the within writ by handing the defendant a copy at his residence." This, we think, good as personal service to the party, and preferable to reading without a copy. If defendant had been unable to read, he might have had this done either by the officer or any one else.

Plaintiff filed objections, which are termed pleas, presenting his defences. There are four of these, on two of which, the first and fourth, issue was joined and a jury found their verdict, which it is unnecessary to notice, as the assignment of errors of the appellant is to the alleged error of the Court in ruling the demurrer to plaintiff's replications. The other pleas adjudged bad are the second and third. We have had no little difficulty in ascertaining the different pleas, as they are not separated in such a manner as to be readily distinguished. Which is the second plea is not so manifest. The answer alleges, that defendant was entitled to credits on the mortgage for about the sum of $600; that Day & Co., the assignors of the mortgage, are insolvent. The replication is, that Day

& Co. are not insolvent. If this be the plea, we have no difficulty in declaring that it presents no defence to the suit. Day & Co. were not the owners or holders of the mortgage; they had assigned and transferred their right and interest to the plaintiff Ely. If they had an equitable claim for a part of the proceeds when collected, provided an amount was received more than sufficient to pay Ely what was due him, how does this affect the defendant's rights, or his defence? It is pretended that he could not safely pay Ely, or that his receipt would not be a discharge. The third plea is, that "he is entitled to a farther credit upon said mortgage; that, in the spring of 1856, this defendant shipped Jack, one of the negro slaves mentioned in said mortgage, to Columbus, Georgia, with the consent and approbation of the said mortgagees, J. Day & Co., and with notice to petitioner Ely, who made no objection to the sale of said negro; that said negro Jack has been sold, and this defendant asks that the proceeds arising from said sale may be credited upon said mortgage debt." No argument is necessary to show that there is not the slightest merit in this plea. If the proceeds of the sale had been paid to Ely, defendant could have plead payment simply, but a sale of part of the mortgage property, without any appropriation of the proceeds to the mortgaged debt, will scarcely amount to a payment. Another assignment of error is that the mortgagees, Day & Co., should have been parties to the suit—the legal interest was in J. Day & Co., and they were the proper parties to commence the suit. The statute under which this proceeding was had is a full answer to this. "It shall be lawful for any mortgagee or mortgagees to assign and transfer any mortgage made to him, her or them, and the person or persons to whom any mortgage may be assigned

31

may also assign and transfer it, and they and their assigns and subsequent assignees may lawfully have, take and pursue the same means and remedies which any mortgagee can or may lawfully have, take or pursue for the foreclosure of any mortgage and for the recovery of the money secured thereby."—Thompson Dig., 376.

Now, the record shows that the defendant was not only informed of the assignment, but admitted its validity, by making a payment of three thousand dollars, and by treating Ely as the owner and proprietor in other respects. Nor do we think the application for a continuance better sustained. "He can't safely go to trial, because he has not taken the evidence to prove the indebtedness of J. Day & Co. to him before the assignment which is set up in his first plea; that he did not take these for the reason that the issues were not joined, stating also that the witnesses reside in Apalachicola." Now the statute directs the case to be decided at the first term, at which time the issues are to be made up, so that, obviously, the party should have been ready with his proofs. But the character of this payment is not stated so as to entitle it to estimation, nor when or how it was made, through whose agency, whether he had a receipt or not for it, whether it was for money paid or cotton, or what else, is not stated. The plea itself fails to state the exact sum, and gives it as "about $600." Nor is the name of the witness given by whom he expects to prove the credit. It is not a little singular, too, that he had a continuance at the previous term of the Court for want of proof of this same and other items. Now it would be a most improper and unusual indulgence to be extending continuances thus repeatedly asked for on the same grounds. We think the Court below decided rightly in refusing to grant it.

The judgment will be affirmed with costs.